## SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

Stephenson Equity Company, Plaintiff–Intervenor,

v.

CREDIT BANCORP, LTD., Credit Bancorp, Inc., Richard Jonathan Blech, Thomas Michael Rittweger and Douglas C. Brandon, Defendants.

Carl H. Loewenson, Jr., Esq., as Receiver for Credit Bancorp, Ltd., Credit Bancorp, N.V., and their subsidiaries and affiliated entities, Third–Party Plaintiff,

v.

Certain Underwriters At Lloyds, London, London Market Companies, Gulf Insurance Company, and Federal Insurance Company, Third–Party Defendants.

No. 99 Civ. 11395(RWS).

United States District Court, S.D. New York.

Jan. 19, 2001.

Securities and Exchange Commission, Salt Lake City, UT, Thomas M. Melton, of counsel, for Plaintiff.

Securities and Exchange Commission, New York, NY, Robert Blackburn, of counsel, for Local Counsel.

Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, OK, Donald L. Kahl, T. Lane Wilson, for Customer–Intervenor SECO, of counsel.

---

Davis Polk & Wardwell, New York, NY, James H.R. Windels, Gary G. Lynch, Jonathan New, for Intervenors Deutsche Bank Securities, Inc. and DB Alex. Brown LLC, of counsel.

Sheldon A. Weiss, Mountainside, NJ, for Customer–Intervenors Stappas et al.

Hogan & Hartson, Washington, DC, E. Bartlett Prettyman, Jr., for Customer–Intervenor Ray Trust, of counsel.

Rosenman & Colin, New York, NY, Joel W. Sternman, for Customer–Intervenor Robert Praegitzer, of counsel.

Barger & Wolen, New York, NY, R. Steven Anderson, for Customer–Intervenor Centigram, of counsel.

Sutherland Asbill & Brennan, Atlanta, GA, Peter J. Anderson, for Customer–Intervenor Centigram, of counsel.

Makoff Kinnear Counsel, San Francisco, CA, Nancy Appel, for Customer–Intervenor John Dillon, of counsel.

Lambos & Junge, New York, NY, Armand P. Mele, for Customer–Intervenors S. Cole–Hatchard, et al, of counsel.

Kirkpatrick & Lockhart, Washington, DC, Richard J. Morvillo, for Intervenor Ameritrade, of counsel.

Morrison & Foerster, New York, NY, Carl H. Loewenson, Receiver and Fiscal Agent, for Receiver.

Dickstein Shapiro Morin & Oshinsky, New York, NY, Randy Paar, for Receiver, of counsel.

## OPINION

SWEET, District Judge.

By letter of January 9, 2001, counsel for Carl H. Loewenson, Jr. (the "Receiver") in the above-entitled third-party action (the "Coverage Action") requested that the temporary stay of the depositions of Thomas Rittweger ("Rittweger") and Douglas Brandon ("Brandon"), imposed pursuant to an order of November 21, 2000, be lifted.[1] Rittweger and Brandon opposed the request.

The November 21 Order was issued in response to a request by Assistant United States Attorney Timothy Coleman, on behalf of the government, to stay the depositions of Virginia Allen ("Allen") and Kenneth Lynch ("Lynch") in this civil action in light of a parallel criminal action being prosecuted by the government. Allen was formerly the North American Managing Director for Credit Bancorp, Ltd., and its related entities (collectively, "Credit Bancorp"), and Lynch was formerly counsel for Credit Bancorp.

In light of Coleman's request, Rittweger and Brandon, two of the individual defendants in the above-entitled first-party action (the "SEC Action"), requested that if such a stay were entered that it extend to them as well, on the grounds that they would otherwise be unfairly prejudiced with respect to the SEC Action. At the hearing on the matter, one of the issues that was discussed was the possible ramifications of the stay for the Coverage Action.

Ultimately, the Court imposed a temporary stay with respect to all four witnesses, *i.e.*, Allen, Lynch, Rittweger, and Brandon, directed that all other discovery relevant to the Coverage Action proceed, and informed the parties that, after this discovery had gone forward, the Court would again consider the issue of whether the stay defeats resolution of the Coverage Action and, if so, how to address that problem. The Court also directed the United States Attorney's office to keep it apprised of any change in the availability of Lynch and Allen.

Rittweger has consistently maintained that, while he is willing to cooperate with discovery in the SEC Action, it is unfair and prejudicial to require him to be deposed without his being able to depose Lynch first. Rittweger maintains that Lynch can be expected to provide exculpa-

---

**1.** The November 21 Order was issued orally at a hearing on that same date.

tory testimony relevant to Rittweger's defense in the SEC Action. Brandon takes essentially the same position.

Rittweger and Brandon rely primarily on *SEC v. Downe*, No. 92 Civ. 4092, 1993 WL 22126 (S.D.N.Y. Jan.26, 1993) which, like this case, concerned a civil action instituted by the SEC, a parallel criminal proceeding, and a request by the United States Attorney to stay the deposition of one of several defendants (Downe) in the civil action in light of the criminal proceeding. *See* 1993 WL 22126, at *12.[2] In *Downe*, the Honorable Peter K. Leisure determined that Downe's deposition should be stayed in order to protect the integrity of criminal proceeding. *Id.* at *13. The problem then was whether to grant a partial stay—*i.e.*, only with respect to Downe—or to stay the civil action altogether. Judge Leisure concluded that, given Downe's central role in the alleged securities fraud, it would be unfair and prejudicial to Downe's co-defendants in the civil action—and would confer an unfair litigation advantage on the SEC—to stay Downe's deposition while permitting the civil action to proceed. *Id.* at *14.

Rittweger and Brandon contend that they are in the same position via-a-vis Lynch as were Downe's co-defendants vis-a-vis Downe.[3] They urge that it would be unfair and prejudicial to permit a "partial" stay, *i.e.*, to permit them to be deposed without their being able to depose Lynch first, because of Lynch's role in the Credit Bancorp and the potential relevance of his testimony to their defense in the SEC action.[4]

Unfortunately, this case is even more complex than *Downe*, in which the only competing interests to be considered, once it was determined that the stay requested by the United States Attorney was warranted, were those of the SEC, on the one hand, and Downe's co-defendants in the civil action, on the other. *See Downe*, 1993 WL 22126, at *14 (determining that Downe's co-defendants had demonstrated unfair prejudice that would result from partial stay, and SEC had demonstrated no prejudice resulting from complete stay). Here, the interests of the defrauded customers of Credit Bancorp also weigh in the balance.

The Coverage Action was brought by the Receiver against Certain Underwriters at Lloyd's, *et al.* (the "Insurers"), in an attempt to recover, on behalf of the Credit Bancorp estate, insurance monies pursuant to certain policies issued to Credit Bancorp. The Insurers maintain that, given the roles of Rittweger and Brandon within Credit Bancorp, the Insurers are entitled to an opportunity to depose these individuals in order to litigate certain affirmative defenses in the Coverage Action. There is little doubt of the merit of this contention.[5] Although the Receiver has proposed in the alternative to lifting the stay that the Coverage Action proceed without the depositions of Rittweger and Brandon, that proposal is not realistic.

The interests of the Credit Bancorp customers will be greatly affected by the outcome of the Coverage Action, given that the insurance coverage represents a significant contingent asset of the Credit Bancorp estate.[6] Although the partial distri-

**2.** In *Downe*, the criminal proceeding had not yet been instituted, as the government had not indicted Downe. *See* 1993 WL 22126 at *13. In this case, an indictment has been issued against Richard Blech ("Blech"), the former president and CEO of Credit Bancorp, but Blech is in France and is resisting extradition.

**3.** Rittweger and Brandon do not press this position with respect to Allen.

**4.** Either of the stay options is, technically, "partial," since no one has suggested staying the SEC Action altogether.

**5.** Obviously, the Court is expressing no view as to the merits of the Insurers' affirmative defenses or the facts of Rittweger's and Brandon's involvement with Credit Bancorp.

**6.** Indeed, according to the Receiver, it is the largest contingent asset, and may be worth as much as some $50 million.

bution plan (approved by separate order of today) will, it is hoped, provide some relief for the customers,[7] the assets currently available for distribution are insufficient to afford anything approaching full recompense.

Of course, it is by no means assured that the Receiver will prevail in the Coverage Action. Nevertheless, the only real hope of obtaining meaningful additional relief for the Credit Bancorp victims lies in that quarter. The longer the Coverage Action is delayed, the longer that relief, if obtainable, is delayed. Such delay only adds to what has, through the fault of no one in particular (or, possibly, of everyone), already become a protracted litigation. Moreover, despite the best efforts of the United States Attorney, and given the ongoing resistance to extradition by Blech, resolution of the parallel criminal proceeding appears to be anything but imminent. Thus, even when compared to situations where resolution of the parallel criminal proceeding is some time away because the government seeks a stay before having issued an indictment, the circumstances here are quite out of the ordinary. *Cf., e.g., SEC v. Mersky*, No. Civ. A 93–5200, 1994 WL 22305, at *2 (E.D.Pa. Jan. 24, 1994) (granting three-month stay pending indictment, to be extended until conclusion of criminal prosecution if indictment issued); *Downe*, 1993 WL 22126, at *14 (granting two-month stay pending indictment, to be extended until conclusion of criminal prosecution if indictment issued).

There is little question at this juncture that the stay as to Allen and Lynch should remain in place,[8] and the United States Attorney takes no position with respect to Rittweger and Brandon. Therefore, resolution of this issue requires a balancing of the competing interests of the SEC, Rittweger and Brandon, and the Credit Bancorp customers. This is a delicate task indeed. Under all the circumstances, the appropriate balance at this juncture is struck by permitting the depositions of Rittweger and Brandon to proceed.

Finally, the Court has inquired of the parties as to whether Rittweger and Brandon could be deposed with respect to issues relevant to the Coverage Action without going into issues relevant to the SEC Action. However, the Insurers have responded, with reason, that such line-drawing is not possible, and none of the other parties were able to offer a solution of this nature.[9]

Therefore, for the reasons set forth above, the stay of the depositions of Rittweger and Brandon will be lifted, effective immediately.

It is so ordered.

---

7. Due to outstanding tax issues which are the subject of a separate motion, the plan cannot become effective unless and until the Receiver and the United States enter into a stipulation permitting the distribution to proceed or, in the alternative, this Court determines that Credit Bancorp's customers have priority over the United States and the States for payment from the receivership assets.

8. The Court recognizes that the Insurers' position is that testimony from Lynch and Allen would also be relevant to the Coverage Action.

9. Based on the present record, whether or not Rittweger and/or Brandon are or will become targets of a criminal investigation is a matter of some uncertainty. However, everyone involved recognizes the possibility that either Rittweger or Brandon may choose to assert his rights under the Fifth Amendment, and that the Insurers may end up being precluded from obtaining certain information for this reason. However, while this possibility adds yet another layer of uncertainty to these proceedings, it is not a reason to prevent the depositions from going forward.